Good morning, Your Honor. Your Honor's Joe Stewart on behalf of appellants. I'd like to reserve three minutes of my time for rebuttal, if I may. I guess I'd like to start out in this case talking about what is undisputed. What is undisputed is that the judgment was entered against the appellants, which contained the original underlying judgment, which contained a permanent injunction. A contempt order was issued requiring compliance with that permanent injunction. The underlying judgment was subsequently lapsed under the Hawaii Judgment Statute 657-5, as has already been ruled by this court. And thus, the issue that remains is, what is the effect of that lapsing of the underlying judgment on the contempt order? I think the important thing to look at is that it is undisputed, even in appellee's brief, that to the extent that the contempt order is a coercive In this case, I guess the first thing we'd like to look at is to look at the actual language of the contempt order itself, which says that the purpose of the contempt order is, quote, to coerce compliance. Did you argue in the district court that it was coercive and not compensatory? Yes, Your Honor, we did. Well, I don't know that we delineated the specifics, but we did argue that it should fall pursuant to the, consistent with the judgment, as noted in one of the precedents of this court, Center for Biological Diversity. But in the oral argument in front of Judge Reel, we did argue that this, the contempt order, should fall with the underlying judgment. Because to the extent that the purpose of the order is to comply, to compel compliance with the permanent injunction, when the permanent injunction is gone, there's no longer any purpose to compel such compliance. So in other words, if it's purely coercive, and that's it, then it's unenforceable. Correct. And I believe that the case law is pretty clear on that. And that's your position here today. If we determine that it's clearly coercive, end of story. Correct. And I think that the important components of looking at the coercive nature, as I said, the specific nature, both as explicitly stated in the original contempt order itself, provided that the order would be eliminated by, that the sanction would be stopped, rather, by the compliance with the underlying injunction order. So clearly both the starting of the contempt order, as well as the way to purge the contempt, if you will, were both in the actual paper judgment that was subsequently entered, you know, 16 years later, that Judge Reel, the district court judge, characterized it as a compensatory judgment. And I guess my argument on that would be, just because I call something an apple, does not mean it's not an orange. You know, in order to change this coercive sanction order into a compensatory order... You know, just because it said that it was coercive, if you look at it carefully, that is the contempt order itself. Yes. It does look like it's also compensatory. The section regarding the order, the contempt award itself, though, is to coerce action. And so I don't think that in this case it's... Well, you can have an order that's both compensatory and coercive. But the underlying findings that would be necessary to make it a compensatory order, that is the direct relationship to the amount of harm imposed upon the party who was seeking contempt. When he imposed the contempt order, he, the district judge... Yes. ...pointed to the fact that the interest and other... The plaintiff was unable to... The judgment was accruing interest of $55,000 a day. There had been an inability to collect on the judgment. And he makes the payment, the daily amount, payable to the plaintiffs. Right. I think we would point out that consistent with the courts holding a rich mark of the timber falling, that the mere fact that it was made to the plaintiffs by the district court does not make it compensatory. As in that case, the court specifically found that it was a coercive sanction that the district court had mistakenly made payable to the... You never challenged that, though, did you? That was not appealed. The coercive... What we would characterize as the coercive order was not appealed by the appellants. It was affirmed as part of the overall appeal on the underlying basis. And that's the point that I would like to get to, is to the extent that the district court is now trying to characterize this as a purely compensatory order, we believe the appropriate mechanism would be either the issuance of a new order or at least an amendment of the prior order, which would allow the appeal of the specific compensatory aspects of it. Because to the extent that the prior order is coercive, it was coercive and thus perhaps upheld on appeal on that basis. But to the extent that it is now being deemed compensatory, it should be subject to the same standards that a compensatory order would be required to be subject to, such as a relationship between the actual harm caused, et cetera. And so we feel that the appropriate mechanism for the district court would have been to either issue a new contempt order or to amend the prior order if it was now to say that the coercive sanction is no longer necessary and it's now purely compensatory. The appropriate thing, rather than just entering a judgment on the prior order, would actually have been to amend the order. Well, here we are. And we've been talking about this as though it's a purely de novo review, looking at the factors. And I agree with you that you can read factors cutting one way or the other. But really, when we take into account two lines of case, one is that the district, we afford some deference to the district court in determining and interpreting its own orders. And two, to the extent it's a finding, we review that for clear error. Where are we on the standard of review in this case, and how do you think it applies? Your Honor, I think that this would be a mistake of law. I think it is a de novo review in that sense. Of course, the court does have authority to impose sanction, and that is subject to an abuse of discretion standard. So to the extent that the underlying sanction was at issue, we would agree that would be an abuse of discretion. But in terms of the mistake of law, in terms of ---- How can a district court make a mistake of law in characterizing its own order? I think that the characterization of the order is inconsistent with the actual terms of the order and the purpose of the order, as noted in the actual terms of the order. Well, it has elements of being compensatory. It's made payable to the district. Your Honor, that's the only element that really is ---- Well, he pointed to the fact that they were unable ---- that this judgment was going unpaid, was collecting interest at $55,000 or whatever it was. I can't remember exactly. Yes, $55,000. A day. A day of interest on the underlying judgment. That's correct, Your Honor. Back at that time when he made the contempt finding or determination, the contempt order, he was concerned that these plaintiffs needed to be compensated. They hadn't been compensated. But there's no relationship that was established between the actual act of contempt. I understand that the sanction amount was or the interest amount on the underlying judgment was $55,000 and the contempt amount was $100,000, but the court didn't draw any sort of relationship between the actual act of contempt and the $100,000. It's not like they were prevented from collecting on the underlying judgment by the acts of contempt, and that wasn't established. In this case, the acts of contempt in this case involved not paying a sum to the district court and then exercising some contracts which were in violation of the underlying injunction. But it was not established that the sale of that artwork, et cetera, prevented them from collecting the $2 billion, almost $2 billion judgment, and thus there's no relationship established between the act of contempt or the acts of contempt and the entirety of the interest. So I think just the fact that those two numbers both appear in the document do not satisfy the requirements to make it a valid compensatory order. So furthermore, I guess to the extent the court would like me to address the argument raised in the Pelley's brief that the issue was not preserved on appeal, I would note that we filed supplemental error of record, but furthermore in the original transcript we did make the argument that, which was attached in the existing excerpts of record, that the contempt order should fall as part of the underlying judgment. So if the court would like me to address that further, I can, but I think that that's somewhat covered in our brief. Was that raised in the brief to the district court? In the supplemental briefing that the district court asked for.  This White Supreme Court subsequently denied answering that question. The district court judge asked for a supplemental briefing, a status report if you will, as to what the impact of the White Supreme Court's denial would be. In that supplemental briefing we raised this argument that the contempt order expired with the expiration of the underlying judgment as well. And that is submitted in the supplemental error excerpt of record, the status conference report that we submitted in response to the court's request for briefing. Furthermore, the actual argument before the judge, before he ruled actually on the issues of the granted motion and the issues of the judgment, we made the same argument, albeit somewhat briefly. So I wouldn't say that it was the most artfully done piece of work in the history of jurisprudence, but it's certainly there. So I think it satisfies the court's requirements to that extent. I see that I have three minutes, so I'd like to reserve that I guess. Thank you. May it please the court, my name is Robert Swift, and for 26 some years I've represented the plaintiff class in this litigation together with my co-counsel Sherry Broder from Hawaii. Your Honor, the misconduct at issue in the contempt proceeding persisted for well over a decade. After a preliminary injunction had been issued, after a permanent injunction had been issued, it caused me to re-raise the issue of contempt even after the sanction had been entered for misconduct that simply persisted. Perhaps the most notable misconduct on the part of the Marcoses was in connection with the Arelma money, which was a matter that was before this court, and where the Marcoses not only hid the existence of $35 million at Merrill Lynch, but they hired a banker and executed powers of attorney so that they could try to grab that money. The reality is that the Marcoses, who have never paid $1 toward the judgment, are recapitalizing their political dynasty in the Philippines with money that should have been paid to the human rights victims. The victims have been unable to recover on their very large judgment, their $2 billion judgment, because of that misconduct and the dealing that was delineated not only in the district court, but also in this court in Judge Fletcher's opinion in 1996, in which she specifically quoted a finding in the district court that the contemptors were trying to reduce the estate to nothing to prevent collection of the judgment in this matter. And indeed, we have succeeded only in collecting a little under $12 million on this judgment after some 26 years of litigation. The seminal event, I think, that you need to consider is the decision of this court in 1996, authored by Judge Fletcher, in which this court upheld the sanction order. And the issue raised by the Marcoses in the district court continually after 2005 was that the contempt order was a judgment entered in 1995, and therefore it expired under the Hawaii Statute 657-5. That was what was briefed in the district court in the arguments that were made, and it was only in connection with a status report prior to the 2011 hearing before Judge Reel that the argument changed slightly. But the status report wasn't intended to change the arguments in the case, and it was only raised obliquely, Mr. Stewart only raised it obliquely, because the only case he cited was the Center for Biodegradable Whatever, which was the decision of this court, and that dealt with whether a district court has jurisdiction to enter contempt after a termination of a proceeding. Now, of course, we concede that the injunction in this case, the permanent injunction, lapsed in 2005 along with the money judgment in Hawaii. But, of course, our judgment had been registered in other states before 2005, and we've even re-registered it since then. And the Fifth Circuit Court of Appeals in 2010 held that we had valid judgments throughout the United States. So we believe that Judge Reel's order was compensatory in nature, even though the original language of the contempt order certainly referred to coercive effect. If you look at it, it looked like it was intended to be somewhat coercive, right? No doubt about it. But, you know, decisions of this court, Shuffler, Richmark, both say that it can have a dual purpose. And I submit that there was a dual purpose, because there was a real danger that we weren't going to be able to collect on the judgment, because they were withholding information. They had been dealing with the Philippine government trying to divide up the assets so that they could continue their political dynasty in the Philippines and not pay any money on this judgment. Well, if it serves a dual purpose, is there a duty on the court to allocate? In this instance, no, because I think the purpose of the contempt changed. While it served a dual purpose to start with, certainly by August of 1996, I believe that the coercive aspect had dissipated. And at that time, because that was the time I made a motion to enter judgment on the accumulated sanctions, and it was that motion that I renewed on successive occasions through 2009. Now, that gets into, Judge Thomas, your question gets into, well, what about quantification of the sanction award? Is that really compensatory or is that coercive? I think the answer is that the amount that we have not been able to recover because of the misconduct is almost the totality of the judgment. The sanction award is far less than that. It's less than one-tenth of it. Now, I know it's a substantial amount, and that troubles me, too. But I've been asking for entry of judgment on the accumulated sanctions for a period of time so that I could initiate execution on that so that we can compensate the human rights victims. When did you say you first moved for entry of a judgment? August of 1996. And how much were you asking for back then? The accumulated amount. Which was the same amount we have here. Which then would have been roughly just under $50 million. But let me mention that. But then you said you continued to renew that. That's right. In other words, the success of motions. Judge Reel held many hearings on contempt over the years. What I would do would be to file a supplemental or renewed motion in connection with the original motion asking again and again for entry of judgment on the accumulated sanction. Now, just consider this, though. This court's opinion was December of 1996, the opinion written by Judge Fletcher. At that point in time, when the court was satisfied with the contempt order and affirmed it, clearly affirmed everything in it, the accumulated sanction was already $56 million. And in a footnote, she noted that there was no issue. No issue had been raised with regard to the amount. So I submit that at this juncture, there still has been no issue raised as to the amount. This court, in its opinions, has clearly delineated that a contemnor who wishes to reduce the amount first must purge his contempt, and Judge Reel, in his original order, said this is how you purge your contempt. And the other thing they must do is then state why it should be reduced and to set forth the amount of assets that they have. That's, I think, black-letter law in this circuit and in most circuits. That was never done. The Marcoses, in effect, through this appeal, are trying to eliminate the contempt sanction and benefit from their misconduct while thwarting the human rights victims in their attempt to recover on their judgment and defying a U.S. court order for over 10 years. Did Judge Fletcher's opinion suggest whether it was a coercive order or not? That issue wasn't raised on appeal, but I submit that under the precedent in this circuit, the law of the case doctrine assumes that that issue was decided in our favor and cannot be re-raised. Because, remember, they took an appeal early on before purging their contempt or whatever. They had their shot at it. They could have raised it then. They didn't. But the prior panel, Judge Fletcher's panel, didn't have to decide, in order to uphold the order, didn't have to resolve whether it was coercive or compensatory, did it? Well, that's true, but on every appeal there's only certain issues that are raised. That issue wasn't raised, and it could have been raised. In other words, that the award should have been payable to the court and not to the class. But it was clear from the outset. But that just sort of suggests that it was compensatory. Yes, that's right. But I don't see how the law of the case doctrine applies to that issue. Because the law of the case doctrine applies to questions that were actually decided. I think you're more arguing waiver, perhaps. I don't know. Well, perhaps, but it's my understanding, and I can't, standing here, give you a citation, but it seems to me that the law of the case doctrine relates to issues that were raised or those that could or should have been raised. I don't think so. Do you have a case? I'm not standing here. I don't, Your Honor. I mean, that sounds more like res judicata or collateral estoppel. In any event, we don't. The idea of law of the case is that you can't re-raise an issue that was decided. It's a prudential doctrine, but I don't think I've ever heard it used in the context of saying you should have raised it and, therefore, you can't now. Well, if you consider the logic of the situation where there are successive appeals and the issues raised in the second appeal could have been raised in the first, I think a good appellate doctrine would be why should we consider this now? You should have raised this with us before. Now, whether that's law of the case or a different doctrine, I'm not sure. If you look at Judge Reill's contempt order, he does use the term two-course compliance, but it also has he does explain the amount of the fine is necessary and appropriate, which suggests that it's also compensatory. Yes, I agree, Your Honor. And the compensatory aspect was certainly present at the very outset. And, as I have stated, I believe that the purpose of the contempt continued. Well, it changed over time. And, certainly, in my mind, the coercive aspect of it dissipated and the compensatory. I'm not sure if I like that argument. I mean, it suggests here that at the time he entered this, it had both a coercive aspect to it and compensatory. Well, I might like your argument better, Your Honor. Well, no, don't, you know. I'm just, I don't know. It's a mixed bag. I mean, the fact that it says it's coercive, it's per diem judgment. That tends to indicate it's coercive and not compensatory. And it has some compensatory aspects to it. So if we assume it's a dual purpose, I don't know where that leaves us. Well, I think what happened here was that Judge Reill wasn't going to increase the contempt sanction. The amount was what it was. I even indicated to the court that I would consider a lesser cumulative sanction because I wanted to get a judgment entered, which I could then try to execute on. What the judge did was give us less than 10% of the amount that we were damaged. And I think to answer a question you raised with other counsel, I believe the standard here is abuse of discretion by the district court as opposed to de novo review. I think all the decisions of this court, whether it be Richmark or Shuffler, all bear that out. If this panel doesn't have any other questions, I'm happy to sit down. Thank you. Your Honor, if I may just address a couple of those points. I guess the first point that I would like to state is that to the extent that the judgment is valid in other circuits, I don't think that's a relevant point. As clearly established by this court, the judgment is not valid in the Ninth Circuit. And to the extent that the plaintiffs are saying, the plaintiff class is saying, they're not able to collect at this time through the acts of defendants, I would also disagree with that. I think the failure to renew the judgment on a timely basis is the reason that they're not able to collect. Let me ask you a question that Judge Pius was talking about. If an order is both compensatory and coercive and is intended to serve a dual purpose, why can't it be treated as either or both? And therefore, why wouldn't it be a compensatory order? Your Honor, I think that if the court were to issue an order that was both intended to be coercive and compensatory, I think it should be delineated as such and noted as to which portion is coercive and which portion is compensatory. I think it can serve two purposes. All of it. All of it is compensatory and all of it is coercive, let's assume for the moment. Okay. If all of it is both, why can't it be treated as compensatory or coercive? In that hypothetical, I don't necessarily disagree that it could be treated as either if it was both. In this case, it specifically says to coerce compliance with the orders. But then it goes on to say the amount of the fine is necessary and appropriate. Right. Because, and he gives three reasons, which suggests to me that it has, it's serving both, the amount is serving both a coercive effect and a compensatory. And so at the end, when it comes down to asking him to enter a judgment, he awards a compensatory amount. In the subsequent judgment document, that's correct. It does state that. In the original contempt award, it says to coerce compliance with the order. Well, you're just looking at one part of it. Well, Your Honor, I think that's the relevant part. Well, I see it. I mean, I have it right here on the screen. I mean, to coerce compliance. I have it underlined. And I think that the court's precedent in Richmark, you know, wherein the court said basically, they did talk about, as counsel said, the changing nature of a sanction. The change in that case was referred to a transition from civil contempt to a criminal. But the court, I think the interesting quotes from that case were that if the sanction is intended to coerce the contempt order to comply with the court's orders and the sanction is conditioned upon continued noncompliance, it is civil, there can be no doubt the sanction is a coercive civil contempt sanction. And I think that's what we've got here. We've clearly got the fact that the court is trying to require compliance with the order and specifically stating that in the contempt order. I don't dispute that later on, you know, after the plaintiffs had failed to renew the judgment, the judge real sort of wanted to give a substitute judgment, if you will, to some very worthy parties, which, you know, nobody's disputing either of those facts. But that's not the purpose. I'm sorry. Well, perhaps. I'm sorry to interrupt you. But the whole question is whether this survives the expiration of the judgment. And there was no attempt made by either party at segregating coercive or compensatory at the time, assuming it serves both purposes. Then the fact that it was a unitary judgment, why does it make any difference? Well, again, I would disagree that it is both. I think it is clearly a coercive sanction. Right. But this is a judgment that is intended to serve two purposes, coercive and compensatory. Neither party asked for an allocation all during the pendency of this thing. Now, the judgment expires and presented to the district court straight up, does this judgment survive? Does the contempt survive? And what's wrong with saying even though it served dual purposes, the judgment itself survives as long as some part of it is compensatory? I don't disagree with Your Honor that a compensatory judgment does. There is case law that a compensatory judgment does survive. And coercive judgment doesn't. Right. Let's say the court said this contempt order, this judgment, is intended to serve both compensatory and coercive elements, to coerce and to compensate. I think, Your Honor, the key point is that needed to be done up front. No, I'm just saying if we were to look back and say, well, no, it served dual purposes, and the only question is whether the judgment survives, why isn't it sufficient to say that if at least part of the purpose of the contempt order was compensatory, it survives the extension of the judgment, underlying judgment? I think that, Your Honor, that is certainly an interpretation that would be contrary to the one that we would ask. But, you know, I think that that's the crux of the issue. Well, I mean, you have Richmark, but that's a civil versus criminal contempt, which is somewhat different. And the general case law that we've cited as well, you know, specifically including a U.S. Supreme Court case, United States Mine Workers, and some of the other cases basically that focus on, I'm sorry, International Union United Mine Workers of America versus Bagwell, I should say, basically noting that the nature of this particular type of sanction is entirely consistent with a coercive sanction. And so that's, I mean, I think that there is sort of a, there's an animal that is a coercive sanction, and this one clearly is it, except, I mean, to the extent that it is deemed to be somewhat compensatory, it seems inconsistent with the nature of compensatory orders, but, you know, inconsistent with how the law has characterized those orders. So, but later on, it was retroactively termed to be that. I guess the question for your honors is, can you retroactively make something something that it was not in the first place? So I'm three minutes over, so unless there's any questions. The question from compensatory versus coercive, you say it was raised in the district court in your statement status report after the California courts declined to answer the question. The Hawaii Supreme Court, yes, your honor. I'm sorry, Hawaii Supreme Court. And that was raised for the first time in your status report. That is correct. And in the hearing prior to the issuance of the judgment. And the only briefs on it were, or the only legal written argument was in the status report, where you gave your basic argument and then said, I was looking for it, but I think you said put it another way. I think we termed it expired as opposed to mooted, I think is the phrase, expired with the underlying judgment. But you were referring to your initial argument, which was just under Hawaii law, it had expired after 10 years. Oh, that's correct, your honor. And I think that's why you said put another way. Put another way, and then put another way, but it's understood that the Hawaii judgment is expired. The contempt award related to discovery, if there's no Hawaii judgment, there's no need for the discovery. And then you mentioned that the contempt award was to coerce the contaminant. And that's your only reference to it in your briefs or your written submissions. I believe that's correct, your honor. That's the only written reference. And the judgment referred to there was the underlying judgment, which was expired as ruled by this court. Okay, thank you.
judges: Reinhardt, Thomas, Paez